## Case No. 10,939.

### PENNINGTON v. SALE et al.

[1 N. B. R. 572 (Quarto, 157); 2 Am. Law Rev. 776.] [1]

District Court, N. D. Mississippi. 1868.

BANKRUPTCY — SHERIFF'S LEVY AFTER FILING OF PETITION.

A levy was made by the sheriff on certain goods of bankrupt after the date of filing his petition in bankruptcy: *Held*, that the title being vested in him, the assignee must make sale and deposit proceeds of such goods subject to whatever claims may be determined by the court to be upon them.

[Cited in Re Dey, Case No. 3,870; Re Carow, Id. 2,426; Re Mallory, Id. 8,991; Re Brinkman, Id. 1.884; Re Hufnagel, Id. 6,837; Thames v. Miller, Id. 13,860.]

[Cited in Stuart v. Hines, 33 Iowa, 60.]

The questions now presented arise upon defendant's demurrer to complainant's bill. The bill in substance states that on the 27th day of May, 1867, said Sale & Phelan obtained, in the circuit court of Monroe county, judgment against said [James F.] Stewart for the sum of $730.77, upon which execution was issued and returned. nulla bona; that on the 11th October thereafter, an alias executed thereon was issued, and on the 11th of January, 1868, levied on a lot of seed cotton, and on the 14th on two mules, and on the 24th on four bales of other cotton, as the property of Stewart, and that the cotton first levied on and the mules were sold by the sheriff, on the 25th January, 1868, and the proceeds first applied to the payment of an elder judgment, and the remainder, $227.97, applied to said execution. That the last of the cotton levied upon is still in the hands of the sheriff, who has advertised the same for sale. That on the 14th of October, 1867, said Stewart filed in this court his petition praying to be de-

1 [Reprinted from 1 N. B. R. 572 (Quarto, 157) by permission. 2 Am. Law Rev. 776, contains only a partial report.]

clared a bankrupt, and was, on the 6th day of December, so declared. Complainant [G. W. Pennington] files with his bill, as an exhibit, a copy of the assignment of the register of the estate of said bankrupt, dated the 3d day of February, 1868. The bill prays that the sheriff be enjoined from the sale of the last mentioned cotton, and that it be turned over to complainant to be sold, and the proceeds applied as this court may direct. The defendants, by their demurrer admit these statements as true, but insist that said judgment was a lien on the cotton; that the title never vested in the complainant; but the state court, by the judgment, obtained complete jurisdiction over the cotton and the subject matter, which cannot be ousted or interfered with by this court.

Two questions are presented: First. Is the judgment stated a lien upon the cotton mentioned? Second. If such a lien, by what process and in what form is it to be enforced? The answer to the first question depends upon whether or not the judgment was enrolled according to the provisions of Act 260, c. 61, Revised Code of this state. Act 261 of the same chapter provides "that all judgments and decrees so enrolled shall be and remain a lien upon the estate real and personal, of the defendant, situated in the county where the enrollment is made, and not otherwise." The bill does not state whether the judgment is, or is not, enrolled.

The answer to the second question will be found in section 1 of the bankrupt act of 1867 [14 Stat. 517], which, among other powers conferred upon the district courts, makes the following provision: "And the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor, or creditors, who shall claim any debt or demand under bankruptcy; to the collection of all assets of the bankrupt, to the ascertainment and liquidation of the liens, and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties, and to the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and due distribution of the assets among all the creditors." In all cases of liens where the parties holding by themselves, or trustees, are in a condition to enforce the lien without the aid of the courts, or their officers, this court will interfere only upon a showing that the interest of the general creditors requires it. The filing of the petition by the bankrupt was the act of bankruptcy; the assignment related back to the date of filing; from that time the estate of the bankrupt was transferred to the jurisdiction of this court, subject to whatever incumbrances might then have attached to it. Had the levy then been made, both the possession and title for the purpose of satisfying the judgment would have been vested in the sheriff, who, as trustee, could have gone on and made the sale as in case of the death

of a defendant. It may well be questioned whether the bankruptcy of the defendant does not work his civil death and produce the same results as to his estate; if so, the right to levy after the act of bankruptcy, would cease; but the levy not having been made at the date of the bankruptcy, the title by operation of law is vested in the assignee, who must make the sale, and deposit the proceeds, subject to whatever claims may be upon it, as hereafter determined by this court. The object and purpose of the bankrupt act of 1867 being to confer upon the district courts, as courts in bankruptcy, full and complete jurisdiction of the bankrupt and his estate, with all parties interested therein; such was repeatedly declared by the courts, federal and state, to have been the case with regard to the bankrupt act of 1841 [5 Stat. 440]. The powers granted under the present act are in many particulars more extensive than under the former one. Whilst this court does not claim the power to restrain the state courts, it does claim the power to restrain parties litigant in the other courts, when it becomes necessary to give force and effect to the jurisdiction and powers conferred upon it under this law, and this position is sustained by numerous decisions of both the national and state courts, under the former law.

For the reasons stated, the demurrer will be overruled, and the defendants allowed fifteen days in which to answer.